

FILED
DEC 18 2014
DEC 18 2014
JUDGE CHARLES R. NORGLE
U.S. District Court Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 09 CR 230-1 |
| v. | Hon. Charles R. Norgle |
| MARWAN ATIEH | |

### PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant MARWAN ATIEH, and his attorney, LINDA S. AMDUR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with one count of wire fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1343.

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with wire fraud affecting a

financial institution, in violation of Title 18, United States Code, Section 1343. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning in or around March 2008 and continuing through in or around May 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant MARWAN ATIEH, along with co-defendant Ruwaida Dabbouseh and others known and unknown, knowingly devised and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, which scheme affected a financial institution.

Specifically, ATIEH, along with Dabbouseh, fraudulently obtained mortgage loan proceeds from Washington Mutual Bank by knowingly preparing and submitting, on behalf of a nominee buyer of a residence located at 11319 S. Normandy Avenue, Worth, Illinois, a loan application that contained materially false and fraudulent statements concerning the buyer's qualifications for the loan.

On or about March 28, 2008, Dabbouseh introduced ATIEH to an individual who, unbeknownst to Dabbouseh and ATIEH, was cooperating with the government ("the CW"). The CW previously told Dabbouseh, who had worked in the real estate industry for a number of years, that he needed a mortgage broker to assist him in securing a fraudulent mortgage loan for the purchase of the Normandy property by a nominee buyer. At the time, ATIEH was a licensed mortgage broker at Citiwide Financial, located in Hanover Park, Illinois. In that capacity, ATIEH prepared and submitted to lenders applications for mortgage loans. During the meeting, ATIEH agreed to prepare and submit, on behalf of a nominee buyer of the Normandy property, a loan application that contained false information regarding the buyer's loan qualifications.

On or about April 10, 2008, ATIEH knowingly prepared a mortgage loan application for the nominee buyer of the Normandy property that contained materially false and fraudulent statements regarding the buyer's employment, income, and intention to occupy the property. ATIEH indicated on the loan application that the buyer intended to occupy the property as his primary residence, which ATIEH knew was false. ATIEH also fabricated the buyer's employment and income on the application. Specifically, ATIEH represented that the buyer was a manager at a cellular telephone store, and earned $4,522 per month, all of which ATIEH knew was false.

Also on or about April 10, 2008, ATIEH submitted to Washington Mutual, which was FDIC-insured at the time, the loan application containing the materially

false statements regarding the Normandy property buyer's employment, income, and intention to occupy the property, knowing that the false statements were material to Washington Mutual's decision to approve and fund the mortgage loan. On or about April 30, 2008, ATIEH received $3,500 from the CW as payment for processing the fraudulent mortgage loan application. Also on or about April 30, 2008, ATIEH, the CW, and Individual A agreed that ATIEH would be paid an additional sum from the loan proceeds. To hide from Washington Mutual the portion of the payment that exceeded ATIEH's standard commission, they agreed to disguise the excess on the HUD-1 as payment to a "possession escrow." ATIEH knew that no "possession escrow" existed, and that representations regarding distribution of the loan proceeds were material to Washington Mutual's decision to approve and fund the mortgage loan.

On or about May 7, 2008, ATIEH and Dabbouseh, and others, caused Washington Mutual to close and fund a mortgage loan of approximately $144,000 to finance the nominee buyer's purchase of the Normandy property. The same day, ATIEH and Dabbouseh executed their mortgage fraud scheme by knowingly causing to be transmitted a wire communication in interstate commerce, namely, a funds transfer in the amount of approximately $145,403.06 from Washington Mutual Bank in Stockton, California, to LaSalle National Bank in Chicago, Illinois, which funds represented the proceeds of a mortgage loan for the purchase of the Normandy property.

The same day, ATIEH received $19,416 of the fraudulently obtained mortgage loan proceeds in the form of checks made payable to entities under

ATIEH's control, including a $10,100 check that ATIEH knew was falsely itemized on the HUD-1 as a payment to a "possession escrow."

7.  Defendant disclosed the following self-incriminating information to the government pursuant to the terms of a proffer agreement. Pursuant to Guideline § 1B1.8(a), this information may not be used in determining the applicable guideline range for defendant:

In or around January 2008, ATIEH participated in a fraudulent mortgage loan transaction involving the purchase of a residential property located at 1829 S. Kedzie Avenue, Chicago, Illinois. Specifically, ATIEH knowingly prepared and submitted to a lender a loan application that contained materially false and fraudulent representations regarding the buyer's employment, income, and intention to occupy the property. Based on the fraudulent loan application prepared by ATIEH, the lender approved and funded the mortgage loan. In exchange for processing the fraudulent loan application, ATIEH received approximately $40,000 of the loan proceeds.

8.  The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

    b.    **Offense Level Calculations**.

        i.    The base offense level for the offense of conviction is 7, pursuant to Guideline § 2B1.1(a)(1).

        ii.    Pursuant to Guideline § 2B1.1(b)(1)(C), because the loss was $19,416, the base offense level is increased by 4 levels.

        iii.    Pursuant to Guideline § 2B1.1(b)(10)(C), the base offense level is increased by 2 levels because the offense involved sophisticated means.

        iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I:

      i. On or about November 6, 1991, defendant was sentenced to one year of court supervision as a result of his conviction for criminal trespass to land in the Circuit Court of Cook County, Illinois. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

      ii. On or about June 8, 1992, defendant was sentenced to two years' probation as a result of his conviction for unlawful use of a weapon in the Circuit Court of Cook County, Illinois. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

    d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 11, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 8 to 14 months' imprisonment, in addition to any supervised release and fine the Court may impose.

    e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and

defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      f.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

12.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding.

### Agreements Relating to Sentencing

13.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as

required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

14. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that

defendant repay the United States $3,500 as compensation for government funds that defendant received during the investigation of the case.

17. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Forfeiture

19. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

20. Defendant agrees to the entry of a personal money judgment in the amount of $19,416, which represents the total amount of proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

21. Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of

11

defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

22. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

23. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 09 CR 230-1.

25. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

26. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.  **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt

beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

        iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a

defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

27. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### **Presentence Investigation Report/Post-Sentence Supervision**

28. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

29. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

30. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual

income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

31. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32. Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the National Credit Union Share Insurance Fund or the Federal Deposit Insurance Corporation, except with the prior written consent of the National Credit Union Administration Board or the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he knowingly violates this prohibition, he may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

33. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

34. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

37. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: December 18, 2014

ZACHARY T. FARDON
United States Attorney

MARWAN ATIEH
Defendant

TYLER C. MURRAY
Assistant U.S. Attorney

LINDA S. AMDUR
Attorney for Defendant

19